## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION
_____

SANUK INVESTMENT, LLC                               **COMPLAINT**

SHARON SCHEUTZE                                     **JURY DEMAND**

On behalf of themselves and others
similarly situated.

       Plaintiffs,

                                          Case No.

v.                                                  HON:

CITY OF DETROIT, a Municipal Corporation

       Defendant.
_____

THE LAW OFFICES OF AARON D. COX, PLLC
Aaron D. Cox (P69346)
Co-Counsel for Plaintiff
23380 Goddard Rd.
Taylor, MI 48180
734-287-3664
www.aaroncoxlaw.com

MARK K. WASVARY, P.C.
Mark K. Wasvary (P51575)
Co-Counsel for Plaintiff
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
248-649-5667
_____

## CLASS-ACTION COMPLAINT

     SANUK INVESTMENT, LLC AND SHARON SCHEUTZE, on behalf of

all others similarly situated, by and through the undersigned attorneys from THE

LAW OFFICES OF AARON D. COX, PLLC and MARK K. WASVARY, P.C.,

states for this Complaint as follows:

## I.   NATURE OF THE ACTION

1.      This action is brought on behalf of a class of all persons who own

residential real property in the City of Detroit (the "City") who offer that property

for rent.

2.      On or about November 17, 2004 the City enacted in Chapter 9, Article

1 ordinance §9-1-36 related to rental housing located within the City of Detroit (the

"Ordinance").

3.      The Ordinance requires that every person who wants to rent real

property within the City of Detroit have their property registered with the City and

obtain a certificate of compliance for doing so.

4.      The Ordinance mandates the issuance of a certificate of compliance if

the subject property is registered and in compliance with Article 9 of the City's

code:

> §9-1-36 (b) As required by this article, certificates of compliance for
>
> buildings and structures **shall** be issued, upon inspection, by the buildings
>
> and safety engineering department, correction of any violations, and a
>
> determination by the buildings and safety engineering department that the

2

building or structure is in compliance with this article.

(emphasis added).

5.      The City re-emphasizes that mandatory nature of the issuance of a

certificate of compliance when the City determines that the structure itself is in

compliance with the City's code:

> §9-1-82 (c) The buildings and safety engineering department **shall** issue a
>
> certificate of compliance for a rental property where the department
>
> determines that the rental property, its units, accessory structures and the
>
> premises, including exterior areas, comply with the standards and
>
> requirements of this article.

6.      Chapter 9, Article 1 of the City's code pertains solely to ensuring that

the subject property is safe and habitable under §9-1-101 through §9-1-503, the

City's property maintenance codes.

7.      An owner of rental property who fails to obtain a certificate of

compliance can not lawfully rent their property in the City of Detroit.

8.      An owner of rental property who fails to obtain a certificate of

compliance is subject to being charged with fines and fees from the City of Detroit.

## II.    WHAT HAPPENED TO PLAINTIFF HAPPENS TO EVERY OTHER HOMEOWNER WHO OWNS RENTAL PROPERTY IN THE CITY

9.      Plaintiff incorporates the preceding paragraphs.

10.     Plaintiff Sanuk Investments, LLC ("Sanuk") is an owner of residential real property in the City of Detroit commonly known as 6219 University, Detroit, MI (the "University Property").

11.     On or about May 11, 2017 Sanuk, through its property manager, registered the University Property as a rental with the City. **Exhibit A**.

12.     The University Property was subsequently inspected by the City and Sanuk performed the required repairs pursuant to Chapter 9, Article 1 of the City's codes and ordinances.

13.     On or about January 3, 2018 the City notified Sanuk that the University Property had passed all inspections, that there were no code violations on the University Property, and that the University Property had also received a lead clearance as required by §9-1-83. **Exhibit B.**

14.     As of January 3, 2018 the City was required under §9-1-36 and §9-1-82 to issue Sanuk a certificate of compliance for the University Property.

15.     On January 4, 2018 the City notified Sanuk's property manager that the City would not issue a certificate of compliance for the University Property because of an "unpaid blight ticket in the name of the applicant or the property owner."

16.     Plaintiff Sharon Schuetze ("Scheutze") is the owner of real property located in the City of Detroit and commonly known as 15751 Sussex, Detroit, MI

4

(the "Sussex Property").

17.     On or about July 14, 2017, Scheutze, through its property manager, registered the Sussex Property as a rental with the City. **Exhibit C.**

18.     The Sussex Property was subsequently inspected by the City and Scheutze performed the required repairs pursuant to Chapter 9, Article 1 of the City's codes and ordinances.

19.     On or about November 7, 2017 the City notified Scheutze that the Sussex Property had passed all inspections, that there were no code violations on the Sussex Property, and that the Sussex Property had also received a lead clearance as required by §9-1-83. **Exhibit D.**

20.     As of November 7, 2017 the City was required under §9-1-36 and §9-1-82 to issue Scheutze a certificate of compliance for the Sussex Property.

21.     On or about December 11, 2017 the City notified Scheutze's property manager that the City would not issue a certificate of compliance for the Sussex Property because of an "unpaid blight ticket in the name of the applicant or the property owner."

22.     Scheutze owns the Sussex property through a self-directed Individual Retirement Account ("IRA"). Pursuant to IRS regulations the IRA, and the assets of the IRA, have to be held by a custodian; in this case, that custodian is Horizon Trust Company. Horizon Trust Company provides this service to hundreds, if not

thousands of individuals, many who own property within the City of Detroit.

23.     Horizon Trust Company does not own the Sussex property.

24.     The City refuses to issue a certificate of compliance on the Sussex Property because the name "Horizon Trust Company" appears in some report as owing obligations to the City.

25.     There is no process or procedure under the City's codes and ordinances in which to appeal the City's denial of a certificate of compliance for any reason.

26.     The City has no lawful basis for which to deny Plaintiffs' certificate of compliance where Plaintiffs have met their burdens under Chapter 9 Article 1 of the City's codes and ordinances.

27.     The City's refusal to issue a certificate of compliance for actual or alleged unpaid blight violations is in direct violation of §9-1-36 and §9-1-82 of the City's code.

28.     The City's conduct as set forth above deprives Plaintiffs of their lawful right to rent their property in the City.

29.     The City's conduct as set forth above subjects Plaintiffs to fines, fees, and other penalties, up to and including criminal charges, for failing to have a certificate of compliance.

30.     The City has demanded that Plaintiffs pay Department of

6

Administrative Hearing fines that are wholly unrelated to Chapter 9, Article 1 of the City's codes and ordinances in order to issue their certificates of compliance. The City's demands include the payment of charges for properties not owned by Plaintiffs and for charges that are barred by the applicable statute of limitations.

31.     It is the policy and custom of the City to illegally enforce its own City code (the "Code") in order to deprive owners of rental properties in the City of their constitutional right to due process and drive revenue growth through the payment of alleged debts that are wholly unrelated to the property seeking a certificate of compliance.

### III. PARTIES

32.     Plaintiff incorporates the preceding paragraphs.

33.     Plaintiff Sanuk Investment, LLC is a Michigan Limited Liability Company. Sanuk owns property in the City of Detroit and has its registered office located in the City of Taylor, County of Wayne, State of Michigan.

34.     Plaintiff Sharon Scheutze is an adult individual who owns property in the City of Detroit. Scheutze resides in Santa Clara, California.

35.     Defendant City of Detroit is a municipal corporation located within Wayne County in the State of Michigan.

### IV.     JURISDICTION AND VENUE

36.     Plaintiff incorporates the preceding paragraphs.

7

37.     Jurisdiction by this Court over Plaintiffs' constitutional claims is proper pursuant to 28 USC § 1343 and 28 USC § 1331.

38.     To the extent necessary, supplemental jurisdiction over any state law claims is proper pursuant to 28 USC § 1367.

39.     Venue is proper in this District pursuant to 28 USC § 1391 because the District is where the Defendants reside, where a substantial part of the events and omissions giving rise to Plaintiff's claims occurred, and where a substantial part of all properties subject to the action are located.

40.     As additional Class Plaintiff are identified, this District will remain the most convenient venue in which all future cases can be considered and consolidated as necessary.

## V.     CAUSES OF ACTION

### COUNT ONE
### VIOLATION OF DUE PROCESS

41.     Plaintiff incorporates the preceding paragraphs.

42.     It is unconstitutional to deprive of a person of their property without due process of law. U.S. Constitution 5th Amendment (applicable to the states through the 14th Amendment); Michigan Constitution 1963 Article 1, Section 17.

43.     Plaintiffs operate their real property as a business and for investment purposes.

44.     Plaintiffs have a constitutional right to the use and benefit of their real

8

property.

45.     Plaintiffs have a constitutional right to earn income from their real

property.

46.     Plaintiffs have a constitutional right to conduct their lawful business

in the City of Detroit.

47.     As set forth above the City is required to issue certificates of

compliance once a property owner has complied with the requirements of Chapter

9, Article 1.

48.     The City's code makes issuance of these certificates mandatory.

49.     The City's code does not provide for any process or procedure by

which to challenge or otherwise appeal the City's refusal to issue a certificate of

compliance for any reason.

50.     As set forth above the City unlawfully deprives Plaintiffs, and those

similarly situated, of their constitutional rights to the use and benefit of their real

property.

51.     As set forth above, the City unlawfully deprives Plaintiffs of these

rights without notice and without affording them with any process or procedure by

which to appeal the City's decision.

52.     The absence of a means to challenge a municipality's removal of a

property right is a constitutional due process violation. See *Mator v City of Ecorse*,

9

301 Fed Appx 476 (6th Cir. 2008).

53.    The due process rights of Plaintiffs and others similarly situated have been violated by the City and as a result Plaintiff has incurred monetary and other damages. Left unchecked, the City will continue to administer its Code in violation of the due process rights of Plaintiffs and other homeowners who are similarly situated.

## COUNT TWO
## ABUSE OF PROCESS

54. Plaintiff incorporates the preceding paragraphs.

55. As set forth above, the City is extorting the payment of fines, fees, and judgments from Plaintiffs, and other homeowners similarly situated, in exchange for the issuance of a certificate of compliance.

56. The purpose of the City's Code related to certificates of compliance is to ensure that the City's housing stock is safe and habitable for its occupants.

57. The City's denial of certificates of compliance for a reason not specifically set forth in their Code is done for the ulterior motive of collecting funds, sometimes even from charges from unrelated properties, owners, or those outside the applicable statute of limitations.

58. As set forth above the City's conduct is unlawful.

59. The City's enforcing agency is presumed to know its own Code, and the applicable laws of the State of Michigan and Constitution of the United States.

10

60. Despite the City's knowledge it has utilized the unlawful scheme of denying constitutionally protected rights in order to collect debts. This practice has been the policy and custom of the City since sometime in mid-2016.

61. As a direct result of the City's abuse of the certificate of compliance process Plaintiffs, and those similarly situated, have suffered damages in the form of loss income and the payment of unlawful charges.

<u>**COUNT THREE**</u>
**MUNICIPAL LIABILITY**

62. Plaintiff incorporates the preceding paragraphs.

63. As set forth herein, the City has administered its City Code in ways which cause and result in depriving owners of rental real property in the City of their due process rights.

64. In fact, the City directly violates its own property maintenance code by withholding certificates of compliance for properties wholly unrelated to those being applied for.

65. In this regard and as a routine part of their policies and customs, the City deprives Plaintiffs, and thousands of other homeowners in the City, of their rights to a meaningful opportunity to be heard and their constitutional right to due process.

66. In this regard and as a routine part of their policies and customs, the City deprives Plaintiffs, and thousands of other homeowners in the City, of their rights

11

by subjecting them to fines, fees, and other penalties up to and including criminal charges.

67. The reason the City and their Agents fail in this respect is because they are driven by profit making rather than a legitimate governmental interest in preserving and protecting the safety and welfare of occupants of housing. This pecuniary motivation deprives the City from any immunity under state law claims.

68. As a direct result of and due to the driving force behind the City's refusal to provide constitutional due process, Plaintiffs and thousands like them have been denied their constitutional rights and subjected to possibly criminal sanctions. Given this manner and form of the City's administration of their Code, homeowners are deprived of their due process right to a meaningful opportunity to be heard.

## COUNT FOUR
## INJUNCTIVE RELIEF

69. Plaintiff incorporates the preceding paragraphs.

70. The City continues to deny the issuance of certificates of compliance to Plaintiffs and others similarly situated in direct violation of the City's Code and in violation of constitutional due process requirements.

71. Plaintiff, and those similarly situated, are still being denied their right to challenge these denials.

72. Unchecked, the City will continue to deny Plaintiff and those similarly

situated certificates of compliance where they have otherwise complied with the City's Code. Such denials deprive Plaintiffs of their constitutional rights to the use and benefit of real property.

73. Given these circumstance the losses to Plaintiffs and other owners of real property in the City are imminent and as such Plaintiffs request injunctive relief and an order stopping the City from its illegal and unconstitutional practices.

## COUNT FIVE
## DECLARATORY RELIEF

74. Plaintiffs incorporate the preceding paragraphs.

75. An actual controversy exists between Plaintiffs and the City of Detroit regarding their administration of the City Code in violation of clearly established constitutional rights.

76. Plaintiffs and others similarly situated are entitled to a declaration of their rights to due process in the context City Code and obtaining certificates of compliance, and ask that the Court determine that the City must comply with the procedural due process requirements and provide Plaintiffs with a meaningful opportunity to be heard through an appropriate appeal notice, appeal hearing, and other due process requirements demanded by the State of Michigan and United States Constitutions.

## COUNT SIX

77. Plaintiffs incorporate the preceding paragraphs.

13

78. The City has been extracting fees and/or penalties from Plaintiffs and those similarly situated by way of denial of procedural due process rights and by conducting the illegal rental registration scheme as set forth above.

79. Pursuant to the City Inspection Ordinances. Sec 8.5-2-19, the City may place a lien on a property for failure of the property owner to pay penalties for alleged code violations.

80. Michigan law provides that an assumpsit remedy may be maintained against a municipality and/or its divisions without regard to government immunity when restitution is being sought for an illegal or inappropriate assessment that is authorized to become a lien on property.

**COUNT SEVEN**
**VIOLATION OF 42 USC 1983**

81. Plaintiffs incorporate the preceding paragraphs.

82. Plaintiffs and the class of those similarly situated have a right to due process to challenge or otherwise appeal their deprivation of the use and benefit of their property rights.

83. Despite these rights, Defendant's customs and policy eliminated Plaintiffs' (and similarly situated class Plaintiff's) rights without any due process or notice of any kind.

84. As set forth above Defendants then proceed to attempt to extort and collect fines and fees from Plaintiffs, and those similarly situated, in violation of their due

14

process rights, and otherwise deprive them of the beneficial use and interest of their property.

85. The City has deprived homeowners within its City of property and rights related thereto and is liable to the Plaintiffs and those similarly situated pursuant to 42 USC 1983.

86. Pursuant to 42 USC 1988, in any action or proceeding to enforce Section 1983 the Court, in its discretion, may allow the prevailing party a reasonable attorney fee as part of the costs.

## VII.   CLASS ALLEGATIONS

87. Plaintiffs incorporate the preceding paragraphs.

88. All Plaintiff and putative class members have suffered and continue to suffer similar harm due to having their property rights deprived by the City without minimum due process. After not receiving adequate notice or a meaningful opportunity to be heard, the Plaintiff and class members are then faced with unlawful collection of fines, possible criminal charges for failure to obtain a certificate of compliance, and the denial of the beneficial use and interest of their property.

89. Class Definition. Plaintiff seeks to certify the following classes

   A) All persons and entities who currently own or at one time owned any parcel of real property located within the City of Detroit who has been denied a certificate of compliance for not receiving a "DAH BLIGHT CLEARANCE" at any time since 2012 and

15

through the date of final judgment, or such longer amount of time as may be allowed by law;

B)  All persons and entities who have paid any fine, fee, or judgment to the City of Detroit or its Agents in order to obtain a "DAH BLIGHT CLEARANCE" in order to receive a certificate of compliance under the City's Code;

C) All persons and entities who have been deprived of lost rental income due to delays in obtaining a certificate of occupancy as a result of the City's unlawful enforcement of its Code; AND

D) All persons and entities that paid any additional rental registration or inspection fees to the City of Detroit at any time from 2012 through the date of final judgment under the City's unconstitutional certificate of compliance scheme that requires property owners to pay for a "DAH BLIGHT CLEARANCE" in order to obtain a certificate of compliance.

90. Numerosity.  The proposed classes are so numerous that joinder of all members is impracticable.  While the exact number of class members is not now known, Plaintiff believe the class number is in excess of 500 members. These members may be readily identified from Defendant's own records.

91. Commonality. There are questions of law or fact common to the members of the class that predominate over questions affecting only individual members.

92. Among the questions of law or fact common to the class are the following:

a)     Did the City provide an avenue to appeal or otherwise challenge the denial of a certificate of compliance for any reason?

b)     Did the City's refusal to issue a certificate of compliance because of

the failure to obtain a DAH BLIGHT CLEARANCE violates

Plaintiffs due process rights?

    c)    Did the City's refusal to issue a certificate of compliance violate their

own ordinances?

93. <u>Typicality.</u>  The harm suffered by Plaintiff is typical of the harm suffered by other class members differing only in amount.  Accordingly, the claims of Plaintiff are the same as those of the other class members.  Resolution of these common questions will determine the liability of the Defendant to Plaintiff and the class members in general.  Thus, the claims properly form the basis for class treatment in this case.

94. Although the amount of damages between individual class members may vary, the underlying liability issues remain the same as between all members of the class and the Defendant.

95. <u>Adequacy of Representation.</u>  The represented parties will fairly and adequately assert and protect the interest of the class.  Plaintiff has already demonstrated its willingness to pursue this litigation on their own behalf, and have no known conflicts with the class members.

96. Plaintiff's co-counsel will also fairly and adequately represent the interest of the class.  Attorney Mark K. Wasvary and Aaron D. Cox are well versed in the facts and substantive law underlying the Plaintiff's claims and has previously been

certified to represent a class in multiple lawsuits involving the IPMC and other Constitutional issues.[1]

97. This class action is maintainable under Federal Rule of Civil Procedure 23(b).

98. The maintenance of this action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

    a)    The prosecution of separate actions by or against individual members of the class could create a risk of inconsistent or varying adjudications with respect to individual members of the class that would confront the party opposing the class with incompatible standards of conduct; and/or

    b)    The prosecution of separate actions by or against individual members

---

[1] Mark K. Wasvary has been certified as class counsel in the following lawsuits in the United States District Court for the Eastern District of Michigan: *Village Center Associates, et.al. v City of Detroit*, USDC Case No. 07-12963, *Lola Valley Terrace Association v Charter Township of Redford*, USDC Case No. 09-11238, *Lanson Development Company LLC v City of Dearborn*, USDC Case No. 09-13956, *Eghigian v Fifth Third Bank*, USDC Case No. 07-14406, *Garner, et.al. v City of Roseville, et.al*, USDC Case No. 16-10760, *Garner Properties & Management, LLC v Township of Redford*, USDC Case No. 16-14100, *Garner v City of Taylor*, USDC Case No. 16-cv-13374, *NILI 2011, et.al. v City of Warren*, USDC Case No. 15-13392. Mark K. Wasvary has also been certified in the Wayne County Circuit Court in the matter of *Woodside Square Limited Partnership v City of Romulus*, Case No. 09-019233-CZ and the Oakland Circuit Court in the matter of *Kelly, et.al. v Birmingham Public Schools,* Case No. 12-130333-CZ. Aaron D. Cox has been certified as class counsel in the following lawsuits: *Garner Properties & Management, LLC v Township of Redford*, USDC Case No. 15-14100, *Garner, et.al. v City of Roseville*, USDC Case No. 16-10760, *Garner v City of Taylor*, USDC Case No. 16-cv-13374 and *NILI 2011, et.al. v City of Warren*, USDC Case No. 15-13392.

of the class would create a risk of adjudications with respect to

individual members of the class that would as a practical matter be

dispositive of the interests of other members not parties to the

adjudications or substantially impair or impede their ability to protect

their interests.

99. The party opposing the class has acted or refuses to act on grounds that

apply generally to the class, so that final equitable, injunctive or corresponding

declaratory and monetary relief is appropriate respecting the class as a whole.

Specifically, Defendants have and continue to deprive homeowners of their right to

appeal a notice of deficiency in violation of the due process rights of the class.

Defendant also continues to violate its own ordinances.

100. The questions of law or fact common to class members predominate

over any questions affecting only individual members, and as such a class action is

superior to other available methods for fairly and efficiently adjudicating the

controversy.

101. The action is and will be manageable as a class action and in fact

more manageable than the prosecution of separate actions in various forums and

venues.

102. In view of the complexity and importance of the constitutional issues

and expense of the litigation, the separate claims of individual class members are

insufficient in amount to support separate actions.

103.     It is probable that the amount which may be recovered for individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action.

104.     Plaintiff is not aware of any members of the proposed class that have filed similar litigation nor is Plaintiff aware of any pending similar litigation in which the City is a Defendant.

105.     The class action is the appropriate method for the fair and efficient adjudication of the controversy.  The legal and factual bases for the Plaintiff's claims are the same as for the claims of all class members.  The only difference between individual claims is the severity of the harm and resulting damages. Adjudicating this case on a class wide basis will promote substantial judicial economy by eliminating the likelihood of multiple cases (perhaps thousands) turning on the same questions of law and fact.  The class action will also provide the Plaintiff with the only meaningful avenue for relief, due to the economy of spreading their litigation costs, thereby reducing each individual's expenses over the class and enabling counsel to pursue the litigation by aggregating the claims. Further, the class action will save the Defendants the burden of defending multiple suits in multiple forums.

## VIII.  RELIEF REQUESTED

WHEREFORE, on behalf of itself and others similarly situated, Plaintiffs request the following relief:

A.     That this action be determined as proper to be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b), together with an order appointing the named Plaintiffs to represent the class and subclass and certifying Plaintiffs' counsel to represent the class and subclass;

B.     The injunctive and declaratory relief as applicable and specified in Counts Four and Five;

C.     An award of damages, including all applicable interest, in an amount to be determined at trial;

D.     An award of costs of this suit, including reasonable attorney's fees, as provided by 42 USC § 1988 or on other grounds;

E.     An award of an incentive fee to the named Plaintiffs for having the courage to come forward and challenge the City and the manner in which it administers its Code; and/or

F.     Any other relief as necessary to redress the violation of Plaintiff's rights secured by the Constitution and laws.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on all claims and issues so triable.

21

Respectfully submitted by:

THE LAW OFFICES OF AARON D. COX, PLLC
Co-Counsel for Plaintiff
23380 Goddard Rd.
Taylor, MI 48180
734-287-3664

/s/ Aaron D. Cox, Esq.
By: Aaron D. Cox (P69346)
aaron@aaroncoxlaw.com


MARK K. WASVARY, P.C.
Co-Counsel for Plaintiff
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
(248) 649-5667

/s/ Mark K. Wasvary
By: Mark K. Wasvary (P51575)
mark@wasvarylaw.com